**ANGINO LAW FIRM, P.C.**
Richard C. Angino, Esquire
I.D. No. 07140
4503 North Front Street
Harrisburg, PA 17110-1708
(717) 238-6791
FAX (717) 238-5610
E-MAIL: RCA@ANGINOLAW.COM                           Attorneys for Plaintiff(s)

IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GLORIA L. TROSTLE, Individually and as Administratrix of and the ESTATE OF DAVID A. TROSTLE, deceased<br>    Plaintiffs | CIVIL ACTION - LAW<br><br>JUDGE<br><br>NO. |
| v. | JURY TRIAL DEMANDED |
| CENTERS FOR MEDICARE AND MEDICAID SERVICES<br>    Defendant | ELECTRONICALLY FILED |

### COMPLAINT

#### I. PRELIMINARY STATEMENT

1. This is an equitable estoppel/waiver/unjust enrichment/mistake/ appeal from an administrative final decision action by Gloria L. Trostle, individually and as administratrix of the Estate of David A. Trostle, deceased, based on a lien Claimed by the Centers for Medicare and Medicaid Services (hereinafter "CMS").

## II. JURISDICTION AND VENUE

2. This Court has Jurisdiction based upon the fact that Gloria L. Trostle resides within the Middle District of Pennsylvania and CMS is a federal governmental entity.

## III. PARTIES

3. Plaintiff Gloria L. Trostle was the wife of David A. Trostle, who is now deceased. This claim is brought on behalf of her, individually and as administratrix of Mr. Trostle's Estate.

4. Plaintiff Gloria L. Trostle is an adult individual, residing in New Bloomfield, Perry County, Pennsylvania.

5. Defendant Centers for Medicare and Medicaid Services (hereinafter "CMS") is a federal entity responsible for the administration of Medicare.

## IV. FACTUAL BACKGROUND

6. On 7/8/11, a dialysis nurse at Fresenius Medical Care, called in a prescription for Lanthanum Phosphate (Fosrenal) into Defendant Bloomfield Pharmacy. The Bloomfield Pharmacy incorrectly filled the prescription with Lithium Carbonate. Subsequently, after taking the medication, Mr. Trostle became ill and was hospitalized on 7/15/11 for lithium toxicity treatment, then transferred to a nursing home for further care.

7. Mr. Trostle spent 66 days in various hospitals and was in a coma for 2 weeks due to this incident.

8. Mr. Trostle incurred large hospital bills including one on 7/15/11 for almost $18,000, and two rehab bills for over $80,000. Mr. Trostle's insurance paid for these bills.

9. Mr. Trostle has Medicare in which there was originally only a $725.17 lien, and since Mr. Trostle was a member of the National Guard, he also has Tricare Health Insurance which filed an original lien of $40,586.37. Plaintiffs' counsel was able to get the trial lien reduced to $26,809.54 as of 1/27/14.

10. Plaintiffs provided Defense counsel lien information during discovery and prior to an eventual mediation.

11. As of May 13, 2014, CMS reported a lien to Plaintiffs' counsel and Defendants as $1,212.32.

12. The parties agreed to submit to mediation on May 21, 2014.

13. Negotiations were premised upon the lien information supplied as being accurate.

14. Settlement was not reached at the mediation, but eventually the parties agreed upon settlement in the amount of $225,000, based upon the belief that CMS's lien was $1,212.32.

15. After the settlement, Plaintiffs' counsel notified CMS of the settlement and offered reimbursement of $1,212.32

16. After the case had settled, CMS increased its claimed lien from $1,212.32 to $53,295.14.

17. As of November 23, 2015, CMS claims its lien is $59,349.95, and has engaged a collection agency to collect the $59,349.98. **Exhibit A**

18. CMS has refused to pay a portion of attorney's fees and costs and refused to reduce its lien. Letters between Plaintiffs' counsel and CMS counsel are attached as Exhibit B.

19. Plaintiffs aver that CMS is not entitled to $59,349.95 because it, without reason, increased Mr. Trostle's lien from the original $1,212.32. Plaintiffs settled their claims for $225,000 based upon the lien being $1,212.32 and the contract doctrines of equitable estoppel, mistake, and waiver preclude CMS from increasing its lien from $1,212.323 to $59,349.95.

20. CMS was continuously informed about Mr. Trostle's case, as evidenced by the fact that CMS periodically increased its lien from the original $725.17 on May 20, 2013, to the final $1,212.32 amount on May 13, 2014.

21. It would be contrary to law and unjust to allow CMS to unilaterally increase its lien subsequent to the settlement of the case and demand $53,295.14, which has since increased to $59,349.95, when the parties relied upon the lien of $1,212.32 in settling this case.

22. The parties acted in reliance upon CMS's representation, and are entitled to the remedy of equitable estoppel, mistake, and waiver.

23. Plaintiffs' counsel has attempted to resolve the dispute through the administrative process included in CMS's internal procedures but has been unsuccessful. **Exhibit C**

## Count I

### Unjust Enrichment

24. Plaintiffs incorporate by reference each preceding paragraph herein.

25. CMS would be unjustly enriched if its lien were to be upheld.

26. CMS led Plaintiffs, and all other parties at the mediation, to believe that its lien was $1,212.32, only to change this lien once Plaintiffs had settled the case.

27. CMS provided no additional services, nor did they assist Plaintiffs in settling the original case in this matter.

28. Awarding CMS anything more than their original lien would be contrary to the law because they fostered a reliance and are now seeking to profit from this reliance, to Plaintiffs' detriment.

29. It would be unjust to allow CMS to unilaterally increase their lien post settlement because it was their negligence in not timely increasing their lien amount, their actions that caused Plaintiffs to act in good faith based off of their representations, and their actions that have caused an unjust harm to Plaintiffs.

## Count II

### Equitable Estoppel

30. Plaintiffs incorporate by reference each preceding paragraph herein.

31. CMS was at best negligent, and at worst knowingly lying to Plaintiffs, when it informed Plaintiffs on May 13, 2014, that their lien was $1,212.32 if, in reality, they believed it to be $53,295.14, the amount requested

572500

after settlement.

32. CMS knew that Plaintiffs would rely on this representation in calculating Mr. Trostle's damages for purposes of trial or settlement negotiations.

33. Plaintiffs acted in good faith to their detriment in reliance on CMS's assertion that their lien was $1,212.32 when Plaintiffs negotiated the final settlement amount of $225,000.

34. Had Plaintiffs known that CMS was actually seeking the $53,295.14 amount, they would have asked for a higher amount when settling the case, and/or the Defendants would have offered more to settle the case, or they would not have settled if Plaintiffs did not feel that Defendant's offer would be suitable in light of the increased lien.

35. Plaintiffs are harmed to their detriment as to the settlement amount, and they are entitled to have the lien reduced to $1,212.32.

36. It would be inequitable to allow CMS to recover anything more than the $1,212.32 they told Plaintiffs was owed, and they should be estopped from doing so.

### Count III

### Waiver

37. Plaintiffs incorporate by reference each preceding paragraph herein.

38. CMS waived its right to any recovery amount above $1,212.32 by acknowledging that the entirety of the lien was $1,212.32 on May 13, 2014.

39. If CMS knew that the lien was in fact more than $1,212.32, by

informing Plaintiffs that CMS would only demand $1,212.32 be repaid, CMS waived any right to additional recovery.

40. Due to this waiver, CMS cannot later increase its lien.

## Count IV

### Appeal From an Administrative Body

41. Plaintiffs incorporate by reference each preceding paragraph herein.

42. Appeals from federal administrative bodies are properly made in Federal Court when there is a final order from an administrative body.

43. Plaintiffs latest appeal through the administrative process outlined by CMS was dismissed on August 24, 2015.

44. This dismissal constitutes a final decision by CMS on the matter.

45. This case differs from the typical appeal of an administrative body because Counts I-III are issues for the Court and not for an administrative entity.

46. Plaintiffs' now request that this Court interfere and not remit for more pointless negotiations with CMS in a process which ultimately ends before this Court anyway.

572500

WHEREFORE, Plaintiffs request that CMS' lien increase after the date of settlement be held unlawful, and that CMS be required to accept $1,212.32, less attorneys' fees, as fulfillment of its lien.

                Respectfully submitted,

                ANGINO LAW FIRM, P.C.

                _____
                Richard C. Angino, Esquire
                PA I.D. No. 07140
                4503 N. Front Street
                Harrisburg, PA 17110
                (717)238-6791 rca@anginolaw.com
                Attorney for Plaintiff

January 26, 2016

DEPARTMENT OF THE TREASURY
BUREAU OF THE FISCAL SERVICE
P. O. BOX 830794
BIRMINGHAM, AL 35283-0794



November 23, 2015

 

DAVID TROSTLE
101 E MAIN ST
NEW BLOOMFIELD, PA 17068

FedDebt Case Identification: 1500310498A
Agency Debt Identification: 740329830

Your unpaid delinquent debt owed to the Department of Health and Human Services, Centers for Medicare & Medicaid Services, Medicare Secondary Payer Debt - Non GHP, has been referred to the U.S. Department of the Treasury for collection. According to the records of the Department of Health and Human Services, you owe $59,349.95.

Collection action will continue unless you make payment, within ten (10) days from the date of this letter, in the amount of $59,349.95, which includes all applicable fees, interest, and penalties, as of today.

If you wish to avoid further collection action and additional charges, you must immediately pay your debt. Your check or money order should be made payable to the U.S. Treasury-FS. To ensure proper credit to your account, please include the FedDebt Case Identification Number 1500310498A in the memo section of your payment. Please note that we accept credit card payments via MasterCard, Visa, Discover, or American Express. Please send your payment with the attached PAYMENT COUPON to:  U.S. Department of the Treasury - FS
    Debt Management Services
    Post Office Box 979101
    St. Louis, MO 63197-9000

You may also make an electronic payment via pay.gov:
    (https://www.pay.gov/paygov/paymydebt).

Correspondence should be mailed to:  U.S. Department of the Treasury
    Debt Management Services
    Post Office Box 830794
    Birmingham, AL 35283-0794

If you are unable to pay your debt in full, please contact a Customer Service Representative toll free at (888) 826-3127, or the Telecommunications Device for the Deaf (TDD) at (866) 896-2947.

U. S. Department of the Treasury
Debt Management Services

DSBDL__003_ fdv1                    Detach Here           000000007621500310498A DL__0027828077 108



PLAINTIFF'S EXHIBIT A

A-1

DAVID TROSTLE
101 E MAIN ST
NEW BLOOMFIELD, PA  17068

FedDebt Case Identification Number:  1500310498A
Amount Due:  $59,349.95
Amount Enclosed:  _____

| METHOD OF PAYMENT (check one): |
| --- |
| *Make the check/money order payable to: U.S. Department of the Treasury-FS* |
| ☐ Personal/Company Check   ☐ Money Order   ☐ Bank Check |
| ☐ Visa   ☐ MasterCard   ☐ Discover   ☐ American Express |
| Credit Card Account Number: _____ |
| Expiration Date: _____   Authorized Amount: _____ |
| Authorized Signature: _____ |

Remit to:
U.S. Department of the Treasury--FS
Debt Management Services
Post Office Box 979101
St. Louis, Mo 63196-9000

979101 1500310498A 0005934995 9



A-2



# ANGINO & LUTZ, P.C.

| | |
|---|---|
| RICHARD C. ANGINO  RCA@ANGINOLUTZ.COM | ANGINO & LUTZ, P.C. 2014 |
| DAVID L. LUTZ  DLUTZ@ANGINOLUTZ.COM | ANGINO & ROVNER, P.C. 1983-2014 |
| JONATHAN E. DANKO  JDANKO@ANGINOLUTZ.COM | BENJAMIN & ANGINO 1979-1983 |

September 10, 2015

Centers for Medicare & Medicaid Services
Coordination of Benefits and Recovery
NGHP
PO Box 138832
Oklahoma City, OK 73113

  Re: David A. Trostle
    Case ID No. 20131 26090 25756
    HIC No.: A194266701
    Date of Injury: 07/08/11

Dear Sir/Madam:

  We are writing in response to your September 4, 2015, correspondence stating the Past-Due debt owed CMS as of August 31, 2015, is $58,424.78. Please know this debt should not be referred to the Department of Treasury at this time because we are under an administrative appeal.

  We request that your Lien be compromised to $33,750.00. One of the Defendants has a check made payable to Medicare for $33,750.00. We will have them send it to you if you agree to the compromise.

  If you do not agree to the compromise, we will escrow the entire claim $58,424.78, and continue to litigate through the administrative process and the federal courts until there is a final resolution. We acted in reliance upon Medicare's Lien being $1,212.32. We were misled. We are of the legal opinion that the Trostles owe Medicare only $1,212.32 that we knew of at the time of Settlement.

              Very truly yours,

              Richard C. Angino

RCA/mam

4503 North Front Street  Harrisburg, PA 17110-1799  Phone: (717) 238-6791  Fax: (717) 238-5610
(800) 648-2070  www.anginolutz.com



B-1

# ANGINO & LUTZ, P.C.

RICHARD C. ANGINO
RCA@ANGINOLUTZ.COM

DAVID L. LUTZ
DLUTZ@ANGINOLUTZ.COM

August 26, 2014

CMS
Centers for Medicare & Medicaid
NGHP
PO Box 138832
Oklahoma City, OK 73113

  Re: **David A. Trostle**
    **Case ID No. 20131 26090 25756**
    **HIC No.: A194266701**
    **Date of Injury: 07/08/11**

Dear Sir or Madam:

  I am attorney for David A. Trostle and I am responding to your communication of August 14, 2014, demanding $53,295.14.

  We notified you of our representation of Mr. Trostle by later dated March 28, 2013, copy of letter, Consent to Release and Proof of Representation forms enclosed.

  On May 10, 2013, you acknowledged our office as representation, copy of letter enclosed.

  On May 13, 2013, you sent out a form letter noting "if we know that you have a lawyer or other person representing you, we have sent him or her a courtesy copy of this letter and you will see him or her listed as a "cc" at the end of this letter." Angino & Rovner was listed and received a copy per cc.

  On August 11, 2013, you confirmed original documentation previously sent on May 20, 2013, "as of this letter, Medicare has identified $725.17 in conditional payments that we believe are associated with your claim. As an attachment to this letter you will find a Payment Summary Form which list claims that add up to this total. Please notify us in writing if you believe that the claims listed are incorrect or inaccurate. Please also provide a description of your injury if it helps us correct our records." Copy of letter and enclosure supporting Medicare payments of 10/21/2011.

B-2

# ANGINO & LUTZ, P.C.

RICHARD C. ANGINO
RCA@ANGINOLUTZ.COM

DAVID L. LUTZ
DLUTZ@ANGINOLUTZ.COM

October 23, 2014

CMS
Centers for Medicare & Medicaid
NGHP
PO Box 138832
Oklahoma City, OK 73113

    Re:    **David A. Trostle**
             **Case ID No. 20131 26090 25756**
             **HIC No.: A194266701**
             **Date of Injury: 07/08/11**

Dear Sir or Madam:

    Enclosed is my letter of August 26, 2014. We followed the law, put Medicare on notice and <u>after</u> the case was settled for $225,000.00, we received a claim from you for $53,295.14. Needless to say, we were shocked.

    The negotiations including mediation were premised upon the Lien for Tricare being $17,873.00, and the Lien for Medicare $1,212.32. All of the parties, including Mr. and Mrs. Trostle agreed to the Settlement under those premises. The Trostles were expecting to receive in excess of $100,000.00 from the $225,000.00 Settlement.

    This was a case of clear liability. Mr. Trostle sustained a significant injury that hospitalized him. After hospitalization and rehab, Mr. Trostle has been on dialysis three days per week. He had been on dialysis before so the issue of factual cause became the principle issue in the case.

    Tricare compromised its original Lien of $26,809.54. See copy of Lien Compromise letter and check sent to Tricare to date.

    We request that you compromise your Lien to $33,750.00. One of the Defendants has a check made payable to Medicare for $33,750.00. We will have them send it to you if you agree to the compromise.

558406

B-3

**Martie Manno**

| | |
|---|---|
| **From:** | O'Grady, Noreen (HHS/OGC) <Noreen.OGrady@HHS.GOV> |
| **Sent:** | Monday, April 06, 2015 2:38 PM |
| **To:** | Richard Angino; Gwen Baughman; Lisa Giknis |
| **Cc:** | Jonathan E. Danko |
| **Subject:** | RE: Mr. Trostle |
| **Attachments:** | reqmt to exh admin remeds.docx |

Mr. Angino, Thank you for your reply. I am attaching language from a recent brief which states our position that even a federal court does not have jurisdiction over Medicare's claim until after Mr. Trostie has exhaausted his administrative remedies. Also, I do not believe that an argument based on detrimental reliance would lie against this government under these circumstances. Even if it did, we would argue that there was no detrimental reliance because Mr. Trostie he received Explanation of Benefits forms from Medicare, and likely received bills from his health care providers, that demonstrated that Medicare paid much more than $2,000 for medical care related to the July 2011 incident.

I will discuss your offer with Medicare, and get back to you.

From: Richard Angino [mailto:rca@anginolutz.com]
Sent: Monday, April 06, 2015 1:21 PM
To: O'Grady, Noreen (HHS/OGC); Richard Angino; Gwen Baughman; Lisa Giknis
Cc: Jonathan E. Danko
Subject: RE: Mr. Trostie

We are contesting the Medicare lien amount under the contract defense of detrimental reliance. We wrote to Medicare time and time again as to the current amount of the lien. We were give a figure that increased but was never more than $1000 +. We had a lien from another medical provider that was close to $50,000 but was substantialy compromised. You have the chronology and exact figures. The three attorneys and mediator relied on the figures given to us to settle the case for $225,000. The case would not have settled for $225,000 if we had any indication tgat Medicare would demand $56,000 , refused to pay a share of attorneys fees and expenses. The detrimental reliance issue is one for judical interpretation whether by declaratory judgment or appeal fron a final administrative ruling. Do you have any case law dealing with the detrimental reliance issue? I am commited to litigating the issue to ensure that Medicare cannot continue doing this. I am willing to settle by paying $10,000. If we do not settle I will file a dec action . You will defend cintending the adminstrative process. One way or another we will gat a fibal ruling from the Middle District or US Supreme Court. This caae is that important for precedential value.

Sent via the Samsung Galaxy Mega™, an AT&T 4G LTE smartphone

1

B-4

-------- Original message --------
From: "O'Grady, Noreen (HHS/OGC)"
Date:04/06/2015 12:07 PM (GMT-05:00)
To: Richard Angino
Subject: Mr. Trostle

Dear Mr. Angino,


Thank you for your time this morning. You mentioned that you would like to explore the possibility of resolving Mr. Trostle's Medicare claim by settlement. As we discussed, please forward a settlement offer either by letter or e-mail, along with the basis for the requested compromise, and I will review it with Medicare. Also, please let me know whether Mr. Trostel is disputing that the claims identified by Medicare are related to the July 8,2011 incident.


Regards,


Noreen C. O'Grady

Assistant Regional Counsel

Office of the General Counsel, Region III

Department of Health and Human Services

Suite 418, The Public Ledger Building

150 S. Independence Mall W.

Philadelphia, PA 19106-3499

ph: 215-861-4420

fax: 215-861-4718

noreen.ogrady@hhs.gov


NOTICE: This E-mail (including attachments, if any) is a confidential communication from an attorney at the U.S. Department of Health and Human Services, Office of General Counsel. It may be exempt from disclosure under attorney-client privilege, attorney work-product immunity, or other rule. No one other than the intended recipient(s) is authorized to read, retain, disseminate, or copy this

2

B-5

communication. If you are not the intended recipient, please notify sender immediately by reply E-mail. Thank you.

B-6



**CMS**
CENTERS for MEDICARE & MEDICAID SERVICES

**Medicare Appeal Number: 1-3298983354**

---

**MAXIMUS Federal Services**

If you have questions, write or call:

MAXIMUS
Federal Services
QIC Part A East
3750 Monroe Ave
Suite 701
Pittsford, NY
14534-1302

**Provider Inquiries**

Visit: www.q2a.com
Or
Call: 585-348-3200

**Beneficiary Inquiries**

Call:

1-800-MEDICARE
Or
1-800-633-4227

**Who we are:**

We are MAXIMUS Federal Services. We are experts on appeals. Medicare hired us to review your file and make an independent decision.

---

ANGINO & LUTZ P.C.
ATTN: RICHARD ANGINO, ESQ
4503 NORTH FRONT STREET
HARRISBURG, PA 17110

August 24, 2015

RE:  Beneficiary:       D. Trostle
     HIC #:             AXXX-XX-6701
     Appellant:         Angino & Lutz P.C.
     Date of Incident:  July 8, 2011

Dear Angino & Lutz P.C.:

**This letter is to inform you that your request for a reconsideration has been dismissed** pursuant to 42 Code of Federal Regulations (CFR) Section 405.972(b)(3). We have dismissed your request because you did not file your appeal request within 180 days of receiving notice of the redetermination.

42 CFR Section 405.962 requires a request for reconsideration to be filed within 180 days of receipt of the redetermination notice. For purposes of meeting the 180-day filing deadline, the request is considered as filed on the date it is received by the QIC. The date you received your redetermination notice is presumed to be 5 days after the date of the notice, unless you provide evidence to the contrary. The date of your redetermination notice was October 15, 2014.

We should have received your request by April 18, 2015 in order for it to have been considered timely. We received your request on June 22, 2015. Because we received your appeal request more than 180 days after you received the redetermination notice, we are dismissing your request for a reconsideration.

Requesting an Extension for Late Filing:

In certain circumstances, we may allow additional time to file if a party requests an extension of the time for filing the reconsideration request. A request for extension of time for filing must be in writing and state why



PLAINTIFF'S EXHIBIT C

C-1

the request for reconsideration was not filed within the required timeframe.

If we receive a request for an extension of time for filing, we will extend the 180-day timeframe if we determine that good cause existed for the late filing. In determining whether good cause existed, we will consider:

- The circumstances that kept the party from making the request on time;
- Whether the Medicare contractor's action(s) misled the party; and
- Whether the party had any physical, mental, educational, or language limitations, including difficulty with the English language, that prevented the party from filing the request on time or from understanding the need to file on time.

In this case, the appellant did not make an argument as to why the request was untimely. Accordingly, we did not find good cause for filing the request late.

<u>If you disagree with this dismissal, you have two options</u>:

1. If you believe the circumstances in your case would provide good cause for late filing (for example, you received incorrect or incomplete information about when and how to request a reconsideration), please submit a letter explaining the situation, <u>along with a copy of this reconsideration dismissal, and a new reconsideration request within 6 months of the date of this notice to:</u>

    MAXIMUS Federal Services
    QIC Part A East
    3750 Monroe Ave, Suite 701
    Pittsford, NY 14534-1302

2. If you think we have dismissed your request incorrectly (for example, you believe you did file your request on time), you may request an Administrative Law Judge (ALJ) review pursuant to 42 CFR Section 405.1004. Your request must be filed within **60 days** of receipt of this letter. The ALJ will have 90 days to complete the review. In your request, please explain why you believe the dismissal was incorrect. The ALJ's review will be limited to whether the dismissal was appropriate based on the evidence in the case at the time of the QIC's review. If the ALJ determines that the QIC's dismissal was in error, he or she vacates the dismissal and remands the case to the QIC for a reconsideration. For more information on how to appeal, see the page entitled "Important Information About Your Appeal Rights."

42 CFR Section 405.966(a)(2) states that all evidence that is not submitted prior to the issuance of the reconsideration decision will not be considered at the ALJ level, or made part of the administrative record, unless the appellant demonstrates good cause as to why the evidence was not provided prior to the issuance of this decision. This requirement does not apply to beneficiaries, unless they are represented by a physician/supplier or a provider of services.

If you have questions, please contact 1-800-MEDICARE (1-800-633-4227).

C-2

Sincerely,

*[signature]*

Jane L. Kjoller MD, FACP
Medical Director

JLK/MM

cc:

BCRC

## Appeal Details at Issue

| Claim Number | Provider | Dates of Service |
|---|---|---|
| MSP 1-3298983354 | MSP Liability | July 8, 2011 |

C-3

## Your Right to Appeal this Dismissal

If you do not agree with this dismissal, you may file an appeal. The next level of appeal is an Administrative Law Judge (ALJ) review of the dismissal at the Office of Medicare Hearings and Appeals (OMHA).

*As of 1/1/2015, you must have a minimum of $150 in dispute to appeal to an ALJ.* A claim can be combined ("aggregated") with others to reach this amount if: (1) the other claims have also been decided or dismissed by a QIC; (2) all of the claims are listed on your request for review; (3) your request for review is filed within 60 days of receipt of all of the QIC dismissals being appealed; and (4) you explain why you believe the claims involve similar or related services.

You can find more information about your right to an ALJ review of a QIC dismissal at www.hhs.gov/omha or by calling 1-855-556-8475. This is a toll free call.

## How to Appeal

To exercise your right to appeal, you must file a written request for an ALJ review within **60 days** of receiving this letter.

When preparing your request for review, please use **Form HHS-725**, available at: www.hhs.gov/omha/forms/index.html

If you do not use the form, your request for review must include the following:

1. The Beneficiary's name, address, and Medicare health insurance claim number;
2. The name and address of the person appealing, if the person is not the beneficiary;
3. The representative's name and address, if any;
4. The Medicare appeal number listed on the front page of this reconsideration notice;
5. The dates of service for the claims at issue;
6. The reasons why you disagree with the QIC's dismissal; and
7. A statement of any additional evidence to be submitted and the date it will be submitted.

Please **do not** attach evidence to your review request. If you have evidence to submit, please submit the evidence directly to the ALJ when your case is assigned.

Mail your review request to (tracked mail is suggested):

**HHS OMHA Central Operations
200 Public Square, Suite 1260
Cleveland, OH 44114-2316**

If you are a Medicare beneficiary filing a request for an ALJ review, please also include "**Attn: Beneficiary Mail Stop**" in the address above.

If your request for review is being filed late, you must explain why your request is being filed late.

The ALJ will require proof that you sent a copy of the request for review to the other parties who received a copy of the QIC dismissal (for example, the beneficiary or provider/supplier). Please **do not** send a copy of your review request to the QIC that issued the dismissal or to the Medicare Administrative Contractor that issued the redetermination.

Please **do not** submit multiple requests for hearing for the same QIC dismissal.

For additional filing tips, go to www.hhs.gov/omha or call 1-855-556-8475 for a copy.

## Who May File an Appeal

You or someone you name to act for you (your **appointed representative**) may file an appeal. You can name a relative, friend, advocate, attorney, doctor, or someone else to act for you.

If you want someone to act for you, you and your appointed representative must sign, date a statement naming that person to act for you and send it with your request for review. Call 1-800-MEDICARE (1-800-633-4227) to learn more about how to name a representative.

## Help With Your Appeal

You can have a friend or someone else help you with your appeal. If you have any questions about payment denials or appeals, you can also contact your State Health Insurance Assistance Program (SHIP). For information on contacting your local SHIP, call 1-800-MEDICARE (1-800-633-4227).

Information about the ALJ review and hearing process can also be found at www.hhs.gov/omha or by calling 1-855-556-8475.

## Other Important Information

If you want copies of statutes, regulations, and/or policies we used to arrive at this decision, please write to us and attach a copy of this letter, at:

MAXIMUS Federal Services
QIC Part A East
3750 Monroe Ave., Suite 701
Pittsford, NY 14534-1302

*If you have questions, please call us at the phone number provided on the front of this notice.*

## Other Resources To Help You

1-800-MEDICARE (1-800-633-4227)
TTY/TDD: 1-800-486-2048

C-4