PJS:DBS:jm

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GLORIA L. TROSTLE, Individually      :
and as Administratrix of the         :
ESTATE OF DAVID A. TROSTLE,          :
deceased                             :
                         Plaintiff   :
                                     :   Civil No. 1:16-00156
              v.                     :
                                     :   (Caldwell, J.)
CENTERS FOR MEDICARE AND             :
MEDICAID SERVICES.                   :
                                     :
                       Defendant     :

**DEFENDANT UNITED STATES OF AMERICA'S
MEMORANDUM OF LAW IN SUPPORT
<u>OF ITS MOTION TO DISMISS</u>**

# Table of Contents

I.   The Medicare Statutory and Regulatory Scheme ...................... 3

II.   Factual Background .................................................... 7

III.  Argument ................................................................ 12

    A. Plaintiff has not alleged any waiver of
    Sovereign Immunity ............................................... 12

    B. The Court does not have Federal Question
    Jurisdiction over Plaintiff's Claims ..................... 14

    C. Plaintiff, the Trostle Estate, has not and can no
    longer exhaust administrative remedies, and,
    therefore, the United States has not waived
    sovereign immunity as to the Estate's Claims .................... 17

    D. Mrs. Trostle, Individually, is not entitled to
    Challenge Medicare's MSP Claim ........................................ 22

# Table of Authorities
## Federal Cases

*Beneficial Consumer Disc. Co. v. Poltonowicz,*
47 F.3d 91 (3d Cir. 1995) ....................................................................13

*Buckner v. Heckler,*
804 F.2d 258 (4th Cir. 1986)........................................................16, 22

*Cato v. United States,*
70 F.3d 1103 (9th Cir. 1995)................................................................13

*Cochran v. U.S. Health Care Fin. Admin.,*
291 F.3d 775 (11th Cir. 2002)..............................................................22

*Fanning v. United States,*
346 F.3d 386 (3d Cir. 2003) ..................................................16, 19, 20

*FDIC v. Meyer,*
510 U.S. 471 (1994)......................................................................12, 14

*Hadden v. U.S.,*
661 F.3d 298 (6th Cir. 2011)..................................................................6

*Heckler v. Ringer,*
466 U.S. 602 (1984)................................................................15, 19

*Lane v. Pena,*
518 U.S. 187 (1996)...............................................................................13

*Makarova v. United States,*
201 F.3d 110 (2d Cir. 2000) ................................................................13

*Maresh v. Thompson,*
290 F.Supp.2d 737 (N.D. Tex. 2003) ..................................................16

*Nichole Med. Equip. & Supply, Inc. v. TriCenturion Inc.*,
    694 F.3d 340 (3d Cir. 2012) ....................................................... 19, 21

*S. Rehab. Group, P.L.L.C. v. Sec. of Health and Human Services*,
    732 F.3d 670 (6th Cir. 2013) .............................................................. 18

*Shalala v. Illinois Council on Long Term Care, Inc.*,
    529 U.S. 1 (2000)......................................................................... 2, 20

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83, 94 (1998) ...................................................................... 12

*United States v. Mitchell*,
    445 U.S. 535 (1980).................................................................... 12, 13

*United States v. Nordic Vill., Inc.*,
    503 U.S. 30 (1992)........................................................................... 13

*United States v. Sherwood*,
    312 U.S. 584 (1941).......................................................................... 13

*Weinberger v. Salfi*,
    422 U.S. 749, 760-61 (1975) .............................................................. 20

*Wilson v. United States*,
    405 F.3d. 1002 (Fed. Cir. 2005) ......................................................... 15

*Wood v. Thompson*,
    246 F.3d 1026 (7th Cir. 2001) ............................................................ 18

*Yale-New Haven Hosp. v. Leavitt*,
    470 F.3d 71 (2d Cir. 2006) ................................................................ 18

*Your Home Visiting Nurse Services, Inc. v. Shalala*,
    525 U.S. 449 (1999)......................................................................... 15

# Federal Statutes

42 U.S.C. § 1395ff(b)................................................................7

42 U.S.C. § 1395ii................................................................14

42 U.S.C. § 1395y(b) (Supp. IV 1980) ................................4

42 U.S.C. § 1395y(b)(2)................................................ 4, 5, 6, 16

42 U.S.C. § 405(h)................................................................14

42 U.S.C. § 405(g)................................................................7, 17

42 U.S.C. §§ 1395 - 1395hhh................................................3

# Federal Rules

Fed. R. Civ. Proc. 12(b)(2) ................................................14

Fed. R. Civ. Proc. 12(b)(6) ................................................23

Federal Rule of Civil Procedure Rule 12(b)(1)............................. 3, 17, 22

# Federal Regulations

42 C.F.R. § 405.904(a)(2)................................................18

42 C.F.R. § 405.906(b)(1)................................................23

42 C.F.R. § 411.22 ................................................5

42 C.F.R. § 411.24(g)................................................5

42 C.F.R. §§ 405.1130................................................7

42 C.F.R. §§ 405.958.................................................................... 7, 11, 219

42 C.F.R. §§ 405.940.................................................................... 7, 10

## Other Authorities

Federal Practice and Procedure § 3654 (3d ed. 1998) ............................ 13

## Unpublished Opinions

2004 WL 2712508 (5th Cir. Nov. 30, 2004)............................................ 16

Plaintiff's complaint is barred by the doctrine of sovereign immunity.   The United States has not waived its sovereign immunity with respect to this action.   In fact, Plaintiff does not even allege such a waiver.   Moreover, this Court has no subject matter jurisdiction over Plaintiff's action because the Medicare beneficiary at issue, David Trostle,[1]  failed to exhaust the available administrative remedies process.

The matter began when the Centers for Medicare and Medicaid Services (CMS)[2]  sent an Initial Determination letter to counsel for Mr. Trostle seeking recovery of $53,295.00 in benefits the Medicare program paid on behalf of Mr. Trostle but for which the Medicare program was not ultimately responsible.   Trostle commenced an administrative appeal to challenge Medicare's Initial Determination.   However, after Medicare issued an unfavorable Redetermination Decision, rejecting his

---

[1]The Medicare Beneficiary at issue in this case is David Trostle, who is deceased and represented by the Administratrix of his estate, Gloria Trostle.

[2] CMS is a component of the U.S. Department of Health and Human Services (HHS) and is responsible for, among other things, operating the Medicare program.

arguments, Mr. Trostle failed to timely appeal that administrative decision, making the decision binding on him.

Moreover, because of Mr. Trostle's procedural default, his estate is now incapable of exhausting its administrative remedies.   The Complaint alleges four counts:   (1) Unjust Enrichment; (2) Equitable Estoppel; (3) Waiver; and (4) Appeal from an Administrative Body.   As explained more fully below, all of Plaintiff's claims had to be channeled through the administrative appeal process by presenting them first to the Secretary of HHS and then exhausting administrative remedies before seeking judicial review of those claims.   *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 12-13 (2000).   Thus, the entire action (*i.e.,* Counts I-IV) must be dismissed due to Plaintiff's failure to exhaust administrative remedies.

Additionally, Mrs. Trostle, individually, is not entitled to challenge the requirement that her husband's estate reimburse the Medicare benefits paid on his behalf.

For these reasons, the United States requests that the action be

dismissed with prejudice[3] pursuant to Federal Rule of Civil Procedure Rule 12(b)(1) and (b)(2) for lack of jurisdiction and (b)(6) for failure to state a claim upon which relief can be granted.

## I. THE MEDICARE STATUTORY AND REGULATORY SCHEME

The Medicare program, which was enacted in 1965, is a federally funded program of health insurance for the aged, the disabled, and persons suffering from end stage renal disease.   42 U.S.C. §§ 1395 - 1395hhh (the Medicare Act).   The Secretary of HHS (the Secretary), acting through the Administrator of the CMS, has overall responsibility for the program.

Prior to 1980, Medicare was the primary payer for most covered medical items and services.   In 1980, Congress enacted a series of statutes designed to stem the skyrocketing costs of the Medicare program.   *See* H.R. Rep. No. 96-1167 (1980), *reprinted in* 1980 U.S.C.C.A.N. 5526, 5752.   These statutes, collectively known as the Medicare Secondary Payer (MSP) provisions, require insurers and the

---

[3]   CMS respectfully requests that Plaintiff's action be dismissed with prejudice given that there is no way Plaintiff can cure its procedural default.

self-insured to make the primary payment for services rendered to

Medicare beneficiaries, leaving the Medicare program to provide benefits

only as a "secondary" payer.   *See* Omnibus Reconciliation Act of 1980,

Pub. L. No. 96-499, § 953, 94 Stat. 2599, 2647; 42 U.S.C. § 1395y(b)

(Supp. IV 1980).

The MSP provisions use two mechanisms to protect Medicare funds

and ensure that Medicare is the secondary payer.   First, these

provisions prohibit Medicare from making payments for covered medical

items and services if payment has already been made or can reasonably

be expected to be made by another source, or "primary plan," such as the

pharmacy's insurer in this case.   *See* 42 U.S.C. § 1395y(b)(2)(A)(ii).

Second, when a primary plan cannot be expected to make payment

promptly, the MSP provisions permit Medicare to pay – but condition

those payments on reimbursement after the primary plan makes

payment.   42 U.S.C. § 1395y(b)(2)(B)(i).   These mechanisms permit a

beneficiary to receive needed medical care while ensuring that the

Medicare Trust Fund will be reimbursed when payment becomes

available from another source.   *See* H.R. Rep. No. 96-1167 (1980),

4

*reprinted in* 1980 U.S.C.C.A.N. at 5752 ("Under this provision, it is
expected that Medicare will ordinarily pay for the beneficiary's care in
the usual manner and then seek reimbursement from the private
insurance carrier after, and to the extent that, such carrier's liability
under the private policy for the services has been determined.")

The MSP provisions of the Social Security Act provide:

> A primary plan, and an entity that receives payment
> from a primary plan, shall reimburse the appropriate
> Trust Fund for any payment made by the Secretary
> under this subchapter with respect to an item or service
> if it is demonstrated that such primary plan has or had
> a responsibility to make payment with respect to such
> item or service.

42 U.S.C. § 1395y(b)(2)(B)(ii); *see al*so 42 C.F.R. § 411.22.   As provided
in the statute, Medicare has a right to recover payments from the
primary plan or an entity that received payment from a primary plan.
Such entities include beneficiaries and attorneys who represent them.
42 C.F.R. § 411.24(g).

The statute continues, defining how a primary plan's responsibility
is demonstrated.

> A primary plan's responsibility for such payment
> may be demonstrated by a judgment, a payment

5

> conditioned upon the recipient's compromise,
> waiver, or release (whether or not there is a
> determination or admission of liability) of
> payment for items or services included in a claim
> against the primary plan or the primary plan's
> insured, or by other means.

*Id.* (emphasis added).   In other words, under § 1395y(b)(2)(B)(ii)

> if a beneficiary makes a "claim against [a] primary
> plan[,]" and later receives a "payment" from the
> plan in return for a "release" as to that claim, then
> the plan is deemed "responsib[le]" for payment of
> the "items or services included in" the claim.
> Consequently, the scope of the plan's
> "responsibility" for the beneficiary's medical
> expenses—and thus of his own obligation to
> reimburse Medicare—is ultimately defined by the
> scope of *his own claim against the third party.*

*Hadden v. U.S.*, 661 F.3d 298, 302 (6th Cir. 2011) (emphasis in original)
(citation omitted).

   After a beneficiary reports a settlement to Medicare, the agency

responds with notification of the amount of reimbursement due.   *See*

*e.g.*, Exhibit 4, CMS's Initial Determination dated August 14, 2014.   If

the beneficiary is dissatisfied with Medicare's determination, he or she

has recourse to a carefully crafted administrative appeals process.   A

beneficiary's appeal rights include, among other things, the right to

request a redetermination from the contractor who made the initial determination, then a reconsideration by a Qualified Independent Contractor (QIC), followed by a hearing before an Administrative Law Judge (ALJ), and a request that the Medicare Appeals Council (MAC) review the ALJ decision.   42 U.S.C. § 1395ff(b) and (c); 42 C.F.R. §§ 405.940, 405.960, 405.1000, 405.1100.   An individual must obtain a decision from the MAC before suing Medicare in federal district court. 42 C.F.R. §§ 405.1130, 405.1136; 42 U.S.C. § 405(g).   If an individual fails to timely appeal at any level of review, the most recent agency decision becomes binding.   *See e.g.*, 42 C.F.R. §§ 405.958, 405.978, 405.1048, 405.1130.

## II.   FACTUAL BACKGROUND

In July 2011, a pharmacy dispensed the incorrect drug to Mr. Trostle, causing him to suffer lithium toxicity which put him in a coma for two weeks and required a 66-day stay in various hospitals.   Doc. 1 at ¶¶6-7.   As Plaintiff alleged in her complaint, "Mr. Trostle incurred large hospital bills" for at least $100,000.00 that was paid by Mr. Trostle's insurers, including Medicare.   *Id.* at ¶8.   Medicare eventually

7

determined that it had paid over $84,000.00 of Mr. Trostle's medical expenses.   *See, infra*, at 10 (discussing Exhibit 4).

Mr. Trostle, through his attorney, reported the case to Medicare. Initially, the agency identified only $725.00 in related claims.   CMS Exhibit 1, CMS Correspondence dated May 20, 2013, at 5.   In its letter to Mr. Trostle in May 2013, Medicare alerted Mr. Trostle that this amount was incorrect:

> ***Please note: If the underlying claim involves ingestion, exposure, implantation, or other non-trauma based injury, this conditional payment amount will need to be revised. Please contact the Benefits Coordination & Recovery Center (BCRC) immediately with a description of the injury so that we may associate the appropriate claims with your case.***

*Id*. at 1-2 (emphasis in original).   As this case involved ingestion of the wrong medication, this instruction put Mr. Trostle on notice that $725.00 was not the correct amount.   The letter further advised Mr. Trostle, "Please be advised that the conditional payment amount listed above is an interim amount. We are still reviewing medical claims related to your case."   *Id*. at 2.

In May 2014, Medicare issued a second letter, to both Mr. Trostle and his attorney,[4] now listing $1,212 in related payments.   Exhibit 2, CMS Correspondence dated May 22, 2014, at 5.   The May 2014 letter again alerted Mr. Trostle that because his injury was caused by ingestion of the wrong medication, the claim amount reported would "need to be revised" and instructed Mr. Trostle to call Medicare "immediately" so that the appropriate medical charges could be associated with his case. *Id.* at 1-2.

Mr. Trostle's attorney proceeded to settlement with the pharmacy without contacting Medicare to determine whether, because this was an ingestion claim, the claim amount needed to be revised.   The parties settled the claims for $225,000.00.   When Mr. Trostle reported the settlement, Medicare performed a further review of its claims, and identified over $84,000.00 in claims related to the lithium toxicity. Exhibit 4, CMS's Initial Determination (excerpts), dated August 14, 2014, at 7.   Medicare reduced its claim by its share of the attorneys' fees

---

[4]Richard Sadlock, carbon copied on the May 2014 letter, was an attorney at Angino-Rovner.   Compare Exhibit 2 at 3 to Exhibit 3 at 1.

and notified Mr. Trostle that it was due $53,295.00 from the settlement proceeds.   *Id.* at 1.   Medicare's letter, a copy of which was sent to Mr. Trostle's attorney, explained how to appeal Medicare's determination. *Id.* at 3-4, 12.

Plaintiff's attorney responded to Medicare's letter by arguing that Mr. Trostle was required to pay only $1,577.00.   Exhibit 5, Trostle's Request for Redetermination, dated August 26, 2014.   Medicare interpreted this letter as a request for redetermination – the first level of the administrative review process.   42 C.F.R. §§ 405.940 – 405.958. Medicare considered Mr. Trostle's appeal, and denied it, informing Mr. Trostle and his attorney of its redetermination.   Exhibit 6, CMS's Redetermination Decision, dated October 15, 2014 at 1.   Again, Medicare explained how to appeal the decision, notifying Mr. Trostle that he had 180 days, or until April 18, 2015, to write to Maximus Federal Services, the Qualified Independent Contractor, to appeal the agency's decision.   *Id.* at 1-2.

Plaintiff failed to file a timely appeal to Maximus.   Exhibit 7, Trostle's untimely Request for Reconsideration (excerpts), dated June

10, 2015.   Consequently, the agency's redetermination decision became binding on Mr. Trostle.   42 C.F.R. § 405.958.

After the period for appealing the redetermination lapsed, Mr. Trostle's attorney submitted an appeal request to Maximus.   Exhibit 7. Trostle's Request for Reconsideration.   Maximus denied the request, explaining that Mr. Trostle's request was not timely.   Exhibit 8, CMS's Reconsideration Decision at 1.   Maximus informed Mr. Trostle's attorney of the options for appealing Maximus's denial.   *Id*. at 2.   If Mr. Trostle believed there was good cause for the late filing, Mr. Trostle had 180 days, or until February 25, 2015, to write to Maximus and explain why.   Alternatively, if Mr. Trostle disagreed that his appeal was untimely, he had 60 days to request a decision from an Administrative Law Judge.   *Id*.   Plaintiff has not alleged Mr. Trostle took either of these actions.

Instead, Plaintiff filed the instant action, claiming, incorrectly, that Maximus's decision is a final decision.   Doc. 1 at ¶44.   Plaintiff asks the Court to require that CMS accept only $1,212.00, less attorney's fees, in full payment of its claim, basing its request on claims of unjust

11

enrichment, equitable estoppel, waiver, and appeal from an administrative body.   For the reasons that follow, Plaintiff's complaint should be dismissed.

## III.   ARGUMENT

### A.   PLAINTIFF HAS NOT ALLEGED ANY WAIVER OF SOVEREIGN IMMUNITY.

Plaintiff bears the burden of establishing subject matter jurisdiction, and has not met her burden in this case.

This Court, like all federal district courts, is a court of limited jurisdiction.   The United States Supreme Court has instructed that "[w]ithout jurisdiction the court cannot proceed at all in any cause. . . . The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception."   *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (internal citations and quotation marks omitted).

It is axiomatic that the United States and its agencies and officers are immune from suit unless it has consented to be sued.   *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *United States v. Mitchell*, 445 U.S. 535,

12

538 (1980).   Such consent can be effected only by an express and unequivocal waiver of sovereign immunity by Congress, and cannot be implied.   *Lane v. Pena*, 518 U.S. 187, 192 (1996); *Mitchell*, 445 U.S. at 538; *Beneficial Consumer Disc. Co. v. Poltonowicz*, 47 F.3d 91, 93-94 (3d Cir. 1995).   Moreover, a waiver of sovereign immunity must be "strictly construed, in terms of its scope, in favor of the sovereign."   *Lane*, 518 U.S. at 192; *see United States v. Nordic Vill., Inc.*, 503 U.S. 30, 34 (1992); *Beneficial Consumer Disc.*, 47 F.3d at 94.   "Sovereign immunity is jurisdictional in nature[;] . . . the 'terms of the United States' consent to be sued in any court define that court's jurisdiction to entertain the suit.'"   *Meyer*, 510 U.S. at 475 (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)).   The plaintiff bears the burden of establishing a sovereign immunity waiver for a claim against the United States, and must establish a waiver for each individual claim and each form of relief. *See generally Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *Cato v. United States*, 70 F.3d 1103, 1107 (9th Cir. 1995); *see also* 14 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3654 (3d ed. 1998).

13

In this case, Plaintiff has not even alleged that the United States waived sovereign immunity in this case and has therefore failed to meet her burden.   Plaintiff's complaint should therefore be dismissed under Fed. R. Civ. Pro. 12(b)(2) for lack of personal jurisdiction.

## B.   THE COURT DOES NOT HAVE FEDERAL QUESTION JURISDICTION OVER PLAINTIFF'S CLAIMS.

Plaintiff appears to allege federal question jurisdiction, claiming that the Court has jurisdiction because "CMS is a federal government entity."   Doc. 1 at ¶2.   However, Plaintiff's claims arise under the Medicare statute, which specifically precludes federal question jurisdiction over Medicare claims.   42 U.S.C. § 405(h).[5]

As incorporated into the Medicare Act by 42 U.S.C. § 1395ii, 42 U.S.C. § 405(h) provides, in relevant part, that:

> No findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or government agency *except as herein provided.*   No action against the United States, the Secretary [of Health and Human Services] or any officer or employee thereof shall be brought under section

---

[5]Moreover, even if there was federal question jurisdiction, which there is not, the Plaintiff would still have to show that the United States consented to be sued over Plaintiff's claims.   As discussed in Section III.A, *supra*, Plaintiff failed to make that showing.

> 1331 or 1346 of title 28 to recover on any claim
> *arising under* this subchapter.

(emphasis added).   The plain language of this statute precludes federal

question jurisdiction for any claim "arising under" the Medicare statute.

A claim arises under the Medicare Act if the Act "provides both the

standing and the substantive basis for presentation of the claim."   *Your*

*Home Visiting Nurse Services, Inc. v. Shalala*, 525 U.S. 449, 456 (1999)

(quoting *Heckler v. Ringer*, 466 U.S. 602, 615 (1984)).   The Supreme

Court has held that even where the Constitution or another statutory

provision also provides a substantive basis for a Medicare claim, § 405(h)

bars federal question jurisdiction.   *Ringer*, 466 U.S. at 622-24.

The Federal Circuit Court of Appeals applied the Supreme Court's

guidance to an MSP case in *Wilson v. United States*, 405 F.3d. 1002, 1013

(Fed. Cir. 2005).   In that case, the plaintiff, the representative of a

beneficiary's estate, sued to recover its payment of an MSP debt, arguing

that the MSP claim was improper.   The Federal Circuit held that the

Medicare Act provided the "standing and the substantive basis" for the

plaintiff's MSP claims because plaintiff's argument implicated the

meaning and scope of various provisions of the Medicare Act.   The Court

15

then held that such a dispute should be channeled through the administrative process created by the Medicare statute and implementing regulations.   Because the plaintiff failed to utilize the administrative process, the court affirmed the lower court's dismissal. *See also Fanning v. United States*, 346 F.3d 386, 402 (3d Cir. 2003) (holding that whether the government could seek MSP reimbursement from plaintiffs was a "claim arising under" the Medicare Act; consequently, § 405(h) of the Medicare Act precluded the district court from having federal question jurisdiction); *Buckner v. Heckler*, 804 F.2d 258, 259 (4th Cir. 1986) (plaintiff's claim that she was not required to reimburse Medicare under the MSP statute arose under the Medicare statute), *cert. denied*, 542 U.S. 919 (2004); *Maresh v. Thompson*, 290 F.Supp.2d 737 (N.D. Tex. 2003) (dismissing declaratory judgment action related to MSP claim where plaintiff alleged federal question jurisdiction), *aff'd,*, 2004 WL 2712508, at *1 (5th Cir. Nov. 30, 2004) (per curiam).

In light of these authorities, there can be no doubt that Plaintiff's claims "arise[] under" the Medicare Act.   The Medicare Act provides

16

"both the standing and the substantive basis" for her claims, because Medicare's right to reimbursement, which she opposes in each of her four counts, is provided for in the statute.   42 U.S.C. § 1395y(b)(2). Consequently, her claims "arise[] under" the Medicare Act, and § 405(h) precludes federal question jurisdiction over it.   Plaintiff's complaint should therefore be dismissed under Fed. R. Civ. Pro. 12(b)(1) for lack of subject matter jurisdiction.

### C.   PLAINTIFF, THE TROSTLE ESTATE, HAS NOT AND CAN NO LONGER EXHAUST ADMINISTRATIVE REMEDIES, AND THEREFORE THE UNITED STATES HAS NOT WAIVED SOVEREIGN IMMUNITY AS TO THE ESTATE'S CLAIMS.

While § 405(h) precludes federal question jurisdiction over Medicare claims, it permits judicial review where the Medicare statute expressly grants that right.   The statute grants judicial review only to individuals who have first obtained a final decision of the Secretary.   As provided in 42 U.S.C. § 405(g), " [a]ny individual, after any final decision of the [Secretary] made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action . . . in the district court of

the United States for the judicial district in which the plaintiff resides . .

. ."

The administrative process for disputing Medicare's initial

determination regarding a claim involves four levels:   (1) request for

redetermination from the Medicare contractor who issued the recovery

demand; (2) request reconsideration by a Qualified Independent

Contractor (QIC); (3) request a hearing before an Administrative Law

Judge (ALJ); (4) and request for review by the Medicare Appeals Council

(MAC).   42 C.F.R. § 405.904(a)(2).    In this framework, the final

decision of the Secretary is the MAC's decision, or – if the MAC declines

to review the case – the ALJ's decision.   *S. Rehab. Group, P.L.L.C. v.*

*Sec. of Health and Human Services*, 732 F.3d 670, 673 (6th Cir. 2013),

*cert. denied*, 134 S. C.t. 2746 (2014); *Yale-New Haven Hosp. v. Leavitt*,

470 F.3d 71, 73 (2d Cir. 2006); *Wood v. Thompson*, 246 F.3d 1026, 1029

(7th Cir. 2001).

Here, Plaintiff appears to allege that she is entitled to sue the

government because the available administrative remedies have been

exhausted.   However, such remedies have not been exhausted, because

Mr. Trostle did not obtain a final decision of the Secretary that would entitle Plaintiff to judicial review under § 405(g).[6]   *See Nichole Med. Equip. & Supply, Inc. v. TriCenturion Inc.,* 694 F.3d 340, 349 (3d Cir. 2012) (making clear that a plaintiff must meet both the presentment and the exhaustion of administrative remedies requirement in order to obtain judicial review).   Instead, Mr. Trostle failed to timely appeal Medicare's redetermination decision, and that decision consequently became binding on Mr. Trostle.   *See* 42 C.F.R. § 405.958.[7]   Because Mr. Trostle failed to obtain a final decision of the Secretary, there is no jurisdiction under § 405(g) over his estate's claims.

Moreover, there is no other avenue for jurisdiction over Mr.

---

[6] The letter that Plaintiff refers to as a "final decision" is a decision of the QIC, not the MAC.   Doc. 1 at ¶44 and Exhibit C.   Moreover, the letter gives Plaintiff instructions on how to appeal the decision.   Thus, the document Plaintiff claims to be the "final decision" reveals on its face that Plaintiff failed to exhaust all available administrative remedies. *See Fanning v. United States*, 346 F.3d 386, 401-02 (3d Cir. 2003) (observing that it was "difficult to define" letters that advised beneficiaries of administrative review rights as "final . . . agency action").

[7] With one exception not relevant here, § 405.958 provides that "[t]he redetermination is binding upon all parties unless—(a) A reconsideration is completed . . . ."

Trostle's estate's claims.   The Supreme Court has recognized that "Section 405(g) . . . is the sole avenue for judicial review for all 'claim[s] arising under' the Medicare Act."   *Heckler v. Ringer*, 466 U.S. 602, 615 (1984) (citing *Weinberger v. Salfi*, 422 U.S. 749, 760-61 (1975).

Plaintiff appears to argue that exhaustion is not necessary, claiming that the unjust enrichment, equitable estoppel and waiver counts of the Complaint "are for the Court," not for the agency.   Doc. 1 at ¶45.   However, "the bar of § 405(h) reaches beyond ordinary administrative law principles of . . . exhaustion of administrative remedies'" and instead "demands the '*channeling' of virtually all legal attacks* through the agency," assuring the agency "greater opportunity to apply, interpret, or revise policies, regulations, or statutes without possibly premature interference by different individual courts applying 'ripeness' and 'exhaustion' exceptions case by case."   *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 12-13 (2000) (citations omitted) (emphasis added), *quoted in, Fanning v. U.S.,* 346 F.3d 386, 398 (3d Cir. 2003).

20

To obtain judicial review under § 405(g), a plaintiff "must have complied with (1) a nonwaivable requirement of presentation of *any* claim to the Secretary, and (2) a requirement of exhaustion of administrative review, which the Secretary may waive." *Nichole Med. Equip. & Supply, Inc. v. TriCenturion, Inc.*, 694 F.3d 340, 349 (3d Cir. 2012) (emphasis in original).   Here, Plaintiff raises state law equitable claims of unjust enrichment, estoppel, and waiver which were not raised in Mr. Trostle's request for redetermination.   Exhibit 6.   Plaintiff has therefore not met the presentation requirement for § 405(g) jurisdiction. *Nichole Med. Equip. & Supply, Inc., supra,* at 349 & n.15 (holding that presentation requirement not met where state law tort and contract claims were not raised during the administrative process.).[8]   In addition, the Secretary has not waived the requirement for exhaustion of administrative remedies, and Plaintiff has not alleged that either her

---

[8]While Plaintiff may argue that the issue of estoppel was raised in the untimely request for reconsideration, Exhibit 7; such an argument ignores that because of Mr. Trostle's procedural default, Plaintiff has not satisfied and can no longer satisfy the exhaustion requirement.

21

husband or his estate exhausted the remedies available to them.
Instead, Mr. Trostle failed to timely pursue his administrative remedies.

In conclusion, Plaintiff's claims arise under the Medicare Act and
can be pursued only through § 405(g).   Plaintiff failed to demonstrate
that the prerequisites for jurisdiction under § 405 have been met.
Consequently, her suit must be dismissed under Fed. R. Civ. Pro.
12(b)(1) for lack of subject matter jurisdiction.   *Cochran v. U.S. Health
Care Fin. Admin.*, 291 F.3d 775, 778-90 & n.4 (11th Cir. 2002) (affirming
dismissal of beneficiary's MSP suit because beneficiary failed to exhaust
administrative remedies); *Buckner v. Heckler*, 804 F.2d 258, 259-60 (4th
Cir. 1986) (per curiam) (affirming dismissal of the beneficiary's
declaratory judgment action related to MSP claim for failing to exhaust
administrative remedies).

### D.   MRS. TROSTLE, INDIVIDUALLY, IS NOT ENTITLED TO CHALLENGE MEDICARE'S MSP CLAIM

While a beneficiary has a right to appeal Medicare's decision
regarding the reimbursement due Medicare under the MSP statute, that
right does not generally extend to the beneficiary's spouse.   The parties
entitled to appeal an initial Medicare determination include the parties

22

to that determination, along with other parties not relevant here.   42 C.F.R. § 405.906(b)(1).   The parties to an initial determination generally include only the beneficiary and the provider or supplier of the medical service or item.   § 405.906(a).   The only exception is when a beneficiary is deceased, and there is no estate .   *Id*.   Here, Mr. Trostle's estate has been raised.   Consequently, the party entitled to challenge Mr. Trostle's obligation to repay Medicare is his estate, represented by Mrs. Trostle. However, Mrs. Trostle, individually, does not have a right to challenge Medicare's MSP claim.   Consequently, Mrs. Trostle's claim on her own behalf should be dismissed under Fed. R. Civ. Pro. 12(b)(6) for failure to state a claim upon which relief can be granted.

WHEREFORE, for the foregoing reasons, the United States respectfully requests that the Court dismiss Plaintiff's action with prejudice.

Dated:   July 13, 2016                    Respectfully submitted,

                                          PETER J. SMITH
                                          United States Attorney

                                          /s D. Brian Simpson
                                          D. BRIAN SIMPSON
                                          Assistant U.S. Attorney
                                          Attorney I.D. No. OH 0071431
                                          U.S. Attorney's Office
                                          228 Walnut Street, Suite 220
                                          Harrisburg, PA 17108-1754
                                          Phone: 717-221-4482
                                          Fax: 717-221-2246
                                          D.Brian.Simpson@usdoj.gov

Of Counsel:

MARGARET M. DOTZEL
Acting General Counsel

JAN M. LUNDELIUS
Chief Counsel, Region III

NOREEN C. O'GRADY
Assistant Regional Counsel
Office of the General Counsel, Region III
Department of Health and Human Services
Suite 418
150 S. Independence Mall West
Philadelphia, PA 19106-3499

## <u>CERTIFICATE OF SERVICE BY MAIL</u>

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania, and is a person of such age and discretion as to be competent to serve papers.

That on July 13, 2016, she served copies of the attached:

**DEFENDANT UNITED STATES OF AMERICAS'
MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION TO DISMISS**

by electronic mail to:

Richard C. Angino, Esquire
4503 North Front Street
Harrisburg, PA   17110-1708
rca@anginolaw.com

/s Jodi Matuszewski
Jodi Matuszewski
Legal Assistant

25