UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

GLORIA L. TROSTLE, Individually and :
as Administratrix of the ESTATE OF :
DAVID A TROSTLE, deceased, :
      Plaintiffs :
       :
      v. : CASE NO. 1:16-CV-156
       :
CENTERS FOR MEDICARE AND :
MEDICAID SERVICES, :
      Defendant :

*M E M O R A N D U M*

*I.*      *Introduction*

On January 29, 2016, Gloria L. Trostle, individually and as administratrix of the estate of David A. Trostle ("Plaintiffs"), filed a complaint alleging that Defendant, Centers for Medicare and Medicaid Services ("CMS"), unfairly and unjustly increased the amount Mr. Trostle owed Medicare following the settlement of a tort liability lawsuit. (Doc. 1). Plaintiffs assert that CMS's actions should be equitably estopped, that CMS would be unjustly enriched if Plaintiffs were to pay the increased amount claimed ($53,295.14), that CMS waived its right to the increased amount based on prior communications, and that Plaintiffs' complaint is an appeal from an administrative body. (Id. ¶¶ 24-46). CMS moved to dismiss the complaint on multiple grounds under Federal Rule of Civil Procedure 12(b). (Doc. 7). For the following reasons, the court will grant CMS's motion and will dismiss Plaintiffs' claims with prejudice.

II.        *Background*[1]

On July 8, 2011, Bloomfield Pharmacy ("Bloomfield") incorrectly filled a prescription for David Trostle, giving him Lithium Carbonate instead of his prescribed Fosrenal. (Doc. 1 ¶ 6). As a result, Mr. Trostle fell seriously ill and was hospitalized for lithium toxicity, spending sixty-six days in various medical facilities for treatment. (Id. ¶¶ 6-7). One of Mr. Trostle's health insurers, Medicare, helped to cover a substantial portion of the nearly $100,000 worth of medical expenses incurred for these medical and rehabilitative treatments. (Id. ¶ 8).

Mr. Trostle brought a personal injury claim grounded in negligence against Bloomfield, and reported this tort claim to CMS on March 28, 2013. (Doc. 1 at 12; Doc. 11-3). CMS, through its Medicare Secondary Payer Recovery Contractor ("MSPRC"), initially asserted a lien of $725.17 against any recovery Mr. Trostle might obtain from his personal injury claim. (Doc. 1 ¶ 9; Doc. 11-1 at 1). Approximately one year later, CMS increased this lien amount to $1,212.32, and on May 22, 2014, informed Mr. Trostle and his attorney of the increase. (Doc. 1 ¶ 11; Doc. 11-2 at 1, 7).

Believing that $1,212.32 was an accurate statement of the lien owed to CMS, Mr. Trostle settled his personal injury claim with Bloomfield for $225,000 on July 9, 2014. (Doc. 1 ¶ 14; Doc. 11-5 at 2). After the settlement was consummated, Mr. Trostle's attorney notified CMS and offered to reimburse CMS the lien amount of $1,212.32. (Doc. 1 ¶ 15; Doc. 11-5 at 2). On August 14, 2014, CMS informed Mr. Trostle that the lien amount had increased to $53,295.14. (Id. ¶ 16; Doc. 11-4 at 1).

---

[1] The following facts are taken from Plaintiffs' complaint and documents attached thereto, as well as from undisputed documentary evidence CMS appended to its motion to dismiss. Because the court decides the instant motion to dismiss solely on subject matter jurisdiction, evidence regarding lack of subject matter jurisdiction presented by CMS is properly considered. See infra Section III.

In a letter to CMS dated August 26, 2014, counsel for Mr. Trostle appealed the lien determination of $53,295.14, claiming that Mr. Trostle had relied on the May 22, 2014 lien figure of $1,212.32 when he agreed to settle his personal injury claim for $225,000, and therefore he did "not have a legal obligation to pay [CMS] $53,295.14." (Doc. 1 at 12; Doc. 11-5). On October 15, 2014, in what appears to be a stock denial letter[2] (officially titled a "redetermination notice"), CMS denied Mr. Trostle's appeal and upheld its lien claim of $53,295.14. (Doc. 11-6 at 1). In this October 15, 2014 redetermination notice, CMS also explained that within 180 days of its decision, Mr. Trostle could request a "reconsideration," whereby a "new and impartial review" would be performed by a Qualified Independent Contractor ("QIC"). (Id. at 1-2). The redetermination notice further explained how to request a QIC reconsideration, and included a blank request form. (Id. at 2, 4).

Mr. Trostle's counsel requested QIC reconsideration by filling out the request form, attaching a typewritten appeal, and sending the request to the appropriate CMS contractor—Maximus Federal Services ("Maximus"). (Doc. 11-7). This request was dated June 10, 2015, and marked by Maximus with a "received" date of June 22, 2015. (Id. at 1, 4).

On August 24, 2015, CMS, through Maximus, informed Mr. Trostle and his attorney that because the request for QIC reconsideration had been received well after the 180-day filing deadline (calculated by CMS as April 18, 2015), the request for QIC reconsideration was dismissed pursuant to the relevant Code of Federal Regulations provisions that govern the appeal process and timing. (Doc. 11-8 at 2). This August 24,

---

[2] CMS's October 15, 2014 redetermination notice to Mr. Trostle states, "In your appeal request you stated that there are claims on the payment summary form unrelated to your case." (Doc. 11-6 at 1). Mr. Trostle's initial appeal, however, makes no such claim. (See Doc. 11-5).

3

2015 CMS dismissal also included instructions on how to seek an extension for late filing of a reconsideration request for good cause, or how to appeal a dismissal through an Administrative Law Judge if a claimant believed the dismissal to be incorrect. (Id. at 2-3). Neither appears to have been done.

At some point Mr. Trostle passed away, and Mrs. Trostle—both in her individual capacity and as the administratrix of Mr. Trostle's estate—filed the instant complaint on January 29, 2016. CMS now moves to dismiss Plaintiffs' claims pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6).

III.    *Standard of Review*

When a Rule 12 motion is based on more than one ground, "the court should consider the Rule 12(b)(1) challenge first, because if the court must dismiss the complaint for lack of subject-matter jurisdiction, all other defenses and objections become moot." In re Corestates Trust Fee Litig., 837 F. Supp. 104, 105 (E.D. Pa. 1993), aff'd, 39 F.3d 61 (3d Cir. 1994). On a motion to dismiss for lack of subject matter jurisdiction, the plaintiff ordinarily bears the burden of persuasion that jurisdiction exists. Gould Elecs., Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000).

A dismissal under Federal Rule of Civil Procedure 12(b)(1) is not a judgment on the merits of a case; rather, it is a determination that the court lacks the power to hear a case. Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). A Rule 12(b)(1) motion may be treated in one of two ways: "either as a facial or a factual challenge to the court's subject matter jurisdiction." John G. v. Northeastern Educ. Intermediate Unit 19, 490 F. Supp. 2d 565, 575 (M.D. Pa. 2007) (citing Gould Elecs., Inc., 220 F.3d at 178).

Should the motion be presented or construed as a facial attack, the court may only consider "the allegations contained in the complaint," exhibits attached thereto, "matters of public record . . . , and 'indisputably authentic' documents which the plaintiff has identified as a basis of his claims and which the defendant has attached as exhibits to his motion to dismiss." Id. (citation omitted).  The facial attack "offers a safeguard to the plaintiff similar to a 12(b)(6) motion; the allegations of the complaint are considered to be true." Mortensen, 549 F.2d at 891.

The second type of Rule 12(b)(1) motion—the factual attack—permits the defendant to submit, and the court to consider, "evidence that controverts the plaintiff's allegations." Gould Elecs., Inc., 220 F.3d at 178.  If the motion factually challenges the court's subject matter jurisdiction, no presumption of truthfulness attaches to the allegations in the plaintiff's complaint, and the plaintiff bears the burden of establishing jurisdiction. Mortensen, 549 F.2d at 891.  In such a case, the plaintiff must be permitted to respond to the defendant's evidence with his or her own evidence supporting jurisdiction. Id.  Only when it is clear from the record that the plaintiff is unable to prove the existence of subject matter jurisdiction may a court properly dismiss the claim pursuant to a Rule 12(b)(1) factual attack. Id.

In the instant case, CMS has submitted substantial evidence with its motion to dismiss to establish that Plaintiffs have failed to exhaust their administrative remedies, and that such failure is fatal to Plaintiffs' ability to prove subject matter jurisdiction. Accordingly, the court will treat CMS's Rule 12(b)(1) motion to dismiss as a factual attack on subject matter jurisdiction.

*IV.*     *Discussion*

CMS asserts that this court does not have subject matter jurisdiction over Plaintiffs' claims for several interrelated reasons. First, CMS maintains that Congress has provided for very limited federal judicial review (i.e., subject matter jurisdiction) over claims "arising under" the Medicare Act, requiring a claimant to fully exhaust his administrative remedies and receive a final decision from the Secretary of Health and Human Services ("Secretary") before taking his claim to the district court. (See Doc. 11 at 17-22). Second, if a claim arises under the Medicare Act, Congress has specifically mandated that such a claim cannot be brought in federal court under federal question jurisdiction, 28 U.S.C. § 1331. (Id. at 14-17). Finally, CMS insists that even if Plaintiffs' equitable claims were found not to arise under the Medicare Act, Plaintiffs have failed to show that the federal government waived sovereign immunity to allow such claims to be brought against one of its agencies.[3] (Id. at 12-14).

Plaintiffs counter that subject matter jurisdiction exists because the United States has expressly waived sovereign immunity over final decisions of CMS under the Medicare Act, and Mr. Trostle's dismissal by Maximus operates as a "final decision." (Doc. 12 at 6-7). Alternatively, Plaintiffs maintain that because their equitable claims are not "arising under" the Medicare Act but rather are grounded in contract law, subject

---

[3] CMS asserts that Plaintiffs' failure to establish waiver of sovereign immunity requires dismissal pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. However, whether sovereign immunity exists or, conversely, the United States has consented to be sued, is an issue of subject matter jurisdiction, not personal jurisdiction. See United States v. Bein, 214 F.3d 408, 412 (3d Cir. 2000) ("It is a fundamental principle of sovereign immunity that federal courts *do not have jurisdiction over suits* against the United States unless Congress, via a statute, expressly and unequivocally waives the United States' immunity to suit.") (emphasis added) (citation omitted); Richards v. United States, 176 F.3d 652, 654 (3d Cir. 1999) ("Sovereign immunity not only protects the United States from liability, it deprives a court of subject matter jurisdiction over claims against the United States.") (citing United States v. Mitchell, 463 U.S. 206, 212 (1983)).

matter jurisdiction exists because Plaintiffs are suing "a federal governmental entity." (Id. at 7-9; Doc. 1 ¶ 2).

### A. Plaintiffs' Claims Arise Under the Medicare Act

In 42 U.S.C. § 405(g), Congress set out how claims or disputes regarding Medicare may reach the federal district courts. Although the language concerns the Social Security Act, it is made applicable to the Medicare Act via 42 U.S.C. § 1395ii. See Heckler v. Ringer, 466 U.S. 602, 614 (1984); 42 U.S.C. § 1395ii. Section 405(g) mandates that a claimant may only seek judicial review in the district court after he receives a "final decision" from the Secretary of Health and Human Services. 42 U.S.C. § 405(g). "[A] final decision is rendered on a Medicare claim only after the individual claimant has pressed his claim through all designated levels of administrative review." Heckler, 466 U.S. at 606.

When a claim or dispute arises under the Medicare Act, and the Secretary makes a final decision, section 405(h) explicitly precludes review by "any person, tribunal, or governmental agency" except as provided by section 405(g). 42 U.S.C. § 405(h). Furthermore, section 405(h) explicitly bars the use of federal question jurisdiction—28 U.S.C. § 1331—for such "arising under" claims. Id. ("No action against the United States, the [Secretary], or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim *arising under* this subchapter." (emphasis added)).

Therefore, whether a claimant is required to navigate the administrative review process and obtain a final decision from the Secretary before seeking district court review turns on whether his claim "aris[es] under" the Medicare Act. See St. Francis Med.

7

Ctr. v. Shalala, 32 F.3d 805, 809-10 (3d Cir. 1994).  If the claim arises under the Medicare Act, sections 405(g) and (h) set out the claimant's "sole avenue for judicial review." Heckler, 466 U.S. at 614-15.  If, however, the claim does not arise under the Act, it follows that the claimant may pursue his claim in the district court so long as subject matter jurisdiction exists and the other prerequisites for federal filing are met.

The Supreme Court of the United States has broadly interpreted the "arising under" language of the Medicare Act.  Id. at 615.  A claim arises under the Medicare Act if "both the standing and the substantive basis for the presentation" of the claim is the Act, id., or if the claim is "inextricably intertwined" with a claim for benefits, id. at 614.  In assessing whether a claim falls into either of these categories, the court "must discount any 'creative pleading' which may transform Medicare disputes into mere state law claims, and painstakingly determine whether such claims are ultimately Medicare disputes." Reg'l Med. Transp., Inc. v. Highmark, Inc., 541 F. Supp. 2d 718, 728 (E.D. Pa. 2008) (quoting Wilson v. Chestnut Hill Healthcare, No. 99-CV-1468, 2000 WL 204368, at *4 (E.D. Pa. Feb. 22, 2000)).

Plaintiffs contend that their claims do not arise under the Medicare Act, but rather are grounded in contract law.  Plaintiffs do not dispute that all of the conditional payments made by Medicare and listed on its August 14, 2014 determination are properly related to treatment for Mr. Trostle's tort-claim injuries.  They also do not dispute that the final lien amount of $53,295.14—asserted by CMS shortly after learning of the personal injury settlement—is an accurate figure for the extensive treatment Mr. Trostle received.

Rather, Plaintiffs' equitable claims of unjust enrichment, estoppel, and waiver are grounded on the theory that CMS failed to properly update its conditional payment

8

letters and its website portal to reflect the more accurate $53,295.14 lien amount. This failure, Plaintiffs assert, led Mr. Trostle and his attorney to believe that only $1,212.32 was owed to Medicare, causing them to rely on that mistaken belief when engaging in settlement negotiations. Plaintiffs further allege that even though CMS was on notice about the nature of Mr. Trostle's tort claim and the dates of the related injuries, and had nearly two years to adjust its conditional payment amount to accurately reflect the true amount owed to Medicare, CMS failed to take appropriate action until after it learned of Mr. Trostle's $225,000 settlement.

Plaintiffs' theory, while unique, fails to remove their claims from beneath the broad umbrella of "arising under" the Medicare Act. Plaintiffs' assertions, though styled as state law equitable claims, essentially argue that CMS's procedures and practices regarding its conditional payment letters and website portal management were deficient and unfair. Because such procedures and practices are part of the Medicare Act itself, however, Plaintiffs' claims necessarily arise under the Act.

The Medicare Secondary Payer ("MSP") provisions, added to the Medicare Act in 1980 to curb rising healthcare costs, allow Medicare (through CMS) to seek reimbursement from a "primary payer" (or an entity that receives payment from a primary payer) for "conditional" payments Medicare has made that should have been made by the primary payer. Fanning v. United States, 346 F.3d 386, 388-89 (3d Cir. 2003); see also 42 U.S.C. § 1395y(b)(2)(B)(ii); 42 C.F.R. § 411.22. In particular, Medicare is authorized to seek reimbursement from a person who received payment from a primary payer, such as a beneficiary or attorney who received settlement funds from a tortfeasor or a tortfeasor's insurer. See 42 C.F.R. §§ 411.22(a), 411.24(g), 411.37.

The processes governing CMS's notification to primary payers of conditional payments, its subrogation rights, its recovery calculations when a settlement is involved, and its MSP "Web portal" are fully set out in the Code of Federal Regulations. See 42 C.F.R. §§ 411.25, 411.26, 411.37, 411.39. Particularly relevant to the instant case is section 411.39, which provides detailed rules for the MSP Web portal, whereby a plaintiff or his attorney can create an account and access conditional payment information online. Notably, subsection (c) of section 411.39 provides step-by-step instructions for obtaining a *final* conditional payment amount through the web portal in the event that settlement is imminent. See 42 C.F.R. § 411.39(c).

Plaintiffs' claims, which challenge CMS's procedures and policies regarding conditional payment communication, settlement notification to CMS, and the MSP Web portal, essentially challenge the Medicare Act and its corresponding regulations. As a result, there is no question that the Medicare Act provides the standing and substantive basis for Plaintiffs' claims, Heckler, 466 U.S. at 614, and therefore such claims arise under the Act.

B. Plaintiffs Fatally Failed to Exhaust Their Administrative Remedies

Because Plaintiffs' claims arise under the Medicare Act, Congress has provided only one avenue for district court review: Plaintiffs must have exhausted their administrative remedies and received a final decision from the Secretary. See 42 U.S.C. § 405(g); Heckler, 466 U.S. at 614-15. Because Plaintiffs failed to follow the course mandated by Congress and detailed within the corresponding federal regulations, this court is without the power to address the merits of Plaintiffs' claims.

10

The administrative process for disputing a Medicare claim is clearly set out in the Code of Federal Regulations. After CMS makes an initial determination, a beneficiary who is "dissatisfied with the initial determination may request that the contractor perform a redetermination if the requirements for obtaining a redetermination are met." 42 C.F.R. § 405.904(a)(2). Requests for redeterminations must be filed within 120 calendar days from the date that the beneficiary receives notice of the initial determination. Id. § 405.942(a). After the redetermination, if the beneficiary is still dissatisfied, he or she may request a reconsideration of the claim by a Qualified Independent Contractor ("QIC"). Id. § 405.904(a)(2). Requests for reconsiderations must be filed within 180 calendar days from the date the beneficiary receives notice of the redetermination. Id. § 405.962(a). Following the reconsideration, the beneficiary may request a hearing conducted by an Administrative Law Judge ("ALJ"). Id. § 405.904(a)(2). Requests for an ALJ hearing must be filed within 60 calendar days after the beneficiary receives notice of the QIC's reconsideration. Id. § 405.1014(b)(1). Should the beneficiary wish to appeal the decision of the ALJ, he or she may request a review conducted by the Medicare Appeals Council ("MAC"). Id. § 405.904(a)(2). The beneficiary must file a request for a MAC review within 60 calendar days after receipt of the ALJ's decision or dismissal. Id. § 405.1102. It is only after receiving a decision from the MAC that a dissatisfied beneficiary may file a complaint in federal district court. Id. § 405.904(a)(2). In other words, after receiving a MAC decision, the "claimant has pressed his claim through all designated levels of administrative review" and has received a "final decision" from the Secretary that is reviewable by a district court. Heckler, 466 U.S. at 606.

Plaintiffs argue that Mr. Trostle exhausted his administrative remedies because, after he failed to timely request QIC reconsideration, his claim was dismissed and CMS's redetermination became binding. Plaintiffs contend, "At this time, the decision from CMS became final because Plaintiffs had no further appeal options through the administrative process." (Doc. 12 at 1).

This argument is misguided, however, because Plaintiffs conflate "final" decision with "binding" decision. If a claimant fails to follow the explicit administrative process to appeal an unfavorable decision, that decision generally becomes binding. See, e.g., 42 C.F.R. § 405.958 ("The redetermination is binding upon all parties unless . . . a reconsideration is completed . . . ."). A "final" decision, on the other hand, "is rendered on a Medicare claim only after the individual claimant has pressed his claim through *all* designated levels of administrative review." Heckler, 466 U.S. at 606 (emphasis added).

Under Plaintiffs' reasoning, any missed deadline in the administrative review process would create a "final" decision, thereby permitting district court review. If this theory were correct, however, claimants could abort the carefully constructed administrative review process whenever they pleased in order to take their claims directly to the district court. Such a theory contravenes the express language of the Medicare Act and its regulations, as well as the policy behind the administrative review process. See Wilson ex rel. Estate of Wilson v. United States, 405 F.3d 1002, 1015 (Fed. Cir. 2005) (explaining that to allow a claimant—who failed to properly exhaust her administrative remedies—to bring an action in federal district court would "substantially . . . undercut Congress'[s] carefully crafted scheme for administering the Medicare Act." (citation and internal quotation marks omitted)). Accordingly, the court rejects Plaintiffs' argument.

The exhibits provided by Plaintiffs and CMS indisputably demonstrate that Mr. Trostle failed to exhaust his administrative remedies. Mr. Trostle received an unfavorable redetermination from CMS on October 15, 2014, but did not request reconsideration until June 22, 2015, more than two months after such a request was due. See 42 C.F.R. § 405.962(a). No extension for filing a late reconsideration request or ALJ review of the dismissal appears to have been sought by Mr. Trostle or his attorney. Consequently, CMS's October 15, 2014 redetermination became binding upon all parties. Id. § 405.958.

Due to Plaintiffs' procedural default, they have not obtained—nor can they obtain—a final decision from the Secretary that would allow them to bring an action in this court. Thus, it is clear from the record that Plaintiffs have not, and cannot, prove the existence of subject matter jurisdiction. Consequently, this court lacks the power to entertain Plaintiffs' claims.[4]

*V.        Conclusion*

Based on the foregoing analysis, this court is without subject matter jurisdiction to entertain Plaintiffs' claims of unjust enrichment (Count I), estoppel (Count 2), and waiver (Count III), which are, in fact, claims arising under the Medicare Act. Furthermore, Plaintiffs' claim that the instant case is an appeal from an administrative body (Count IV) also lacks subject matter jurisdiction because this case is not an appeal from a final decision issued by the Secretary of Health and Human Services, as required by Congress.

---

[4] Because subject matter jurisdiction is lacking for all claims, there is no need to address CMS's motion to dismiss pursuant to Rule 12(b)(6).

Accordingly, CMS's motion (Doc. 7) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) must be granted. This dismissal will be with prejudice, as no amendment to Plaintiffs' complaint could infuse subject matter jurisdiction into any of Plaintiffs' claims. An appropriate order will follow.

/s/ William W. Caldwell
William W. Caldwell
United States District Judge